UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 3:23-CR-029-29 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | GALVESTON, TEXAS |
| | . | WEDNESDAY, APRIL 3, 2024 |
| PATSAMONG SOMKONGMANY, | . | 12:50 P.M. TO 01:45 P.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . . .

DETENTION HEARING

BEFORE THE HONORABLE ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:                    SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: ANTONIO B. BANDA

CASE MANAGER:                   RUBEN CASTRO

OFFICIAL INTERPETER:            RAMON DEL VILLAR


TRANSCRIPTION SERVICE BY:

**TRINITY TRANSCRIPTION SERVICES**
**1081 Main Street**
**Surgoinsville, TN 37873**
**281-782-0802**


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

```
UNITED STATES OF AMERICA,      .    CASE NO. 3:23-CR-029-29
                               .
             PLAINTIFF,        .
                               .
       V.                      .    GALVESTON, TEXAS
                               .    WEDNESDAY, APRIL 3, 2024
PATSAMONG SOMKONGMANY,         .    12:50 P.M. TO 01:45 P.M.
                               .
             DEFENDANT.        .
. . . . . . . . . . . . . . . .
```

DETENTION HEARING

BEFORE THE HONORABLE ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

Appearances:

**For the GOVERNMENT:**          **KENNETH A. CUSICK, ESQ.**
                                 Assistant United States Attorney
                                 Office of the United States
                                   Attorney
                                 601 25TH Street, Room 227
                                 Galveston, TX 77550


**DEFENDANT SOMKONGMANY:**       **ALEJANDRO MACIAS, ESQ.**
                                 Law Office of Alejandro
                                   Macias, P.C.
                                 5300 Memorial Drive, Suite 1000
                                 Houston, TX 77007


Transcription Service:           Cheryl L. Battaglia
                                 Trinity Transcription Services
                                 1081 Main Street
                                 Surgoinsville, TN 37873

1

1     **Galveston, Texas; Wednesday, April 3, 2024; 12:50 p.m.**

2      **(Official Interpreter Present.)**

3          **UNITED STATES MARSHAL:**  All rise.

4          **THE COURT:**  Please be seated.

5       **(Pause in the proceeding.)**

6          **THE COURT:**  Okay.  We are here on *Case 3:23-CR-29-29,*

7   *United States versus Patsamong Somkongmany.*

8          Who do we have for the Government, please?

9          **MR. CUSICK:**  Kenneth Cusick.

10          **MR. MACIAS:**  Alejandro Macias for Mr. Somkongmany.

11          **THE COURT:**  Good to see you.  And good to see

12   you -- is it Somkongmany?

13          **DEFENDANT SOMKIONGMANY:**  Yes, pretty close, yes.

14          **THE COURT:**  How do I pronounce it?

15          **DEFENDANT SOMKIONGMANY:**  Somkongmany.

16          **THE COURT:**  Somkongmany.  Okay.

17          Good to see you, sir.  Obviously, we're here for a

18   detention hearing.  You're seen how the detention hearings

19   work.  So you know how it works.

20          Are we ready to proceed?

21          **MR. CUSICK:**  Yes, your Honor.

22          **MR. MACIAS:**  Yes.

23          **THE COURT:**  And let me guess, Mr. Emerson is going to

24   be the -- the witness?

25          **MR. CUSICK:**  Yes, sir.

2

1          **THE COURT:**  If you would make the proffer, I would

2     appreciate it.  And just so the record is clear, I have

3     reviewed and read Exhibit 1, which is the Pretrial Report.  And

4     that will be Exhibit 1 to this hearing and this hearing only.

5               With that said and done, I will let you proceed.

6          **MR. CUSICK:**  Thank you, your Honor.

7               Proffer made, DEA Task Force Officer James Emerson

8     for this Defendant will be that --

9          **(Pause in the proceeding.)**

10         **MR. CUSICK:**  Agent Emerson believes --

11         **(Telephonic announcement.)**

12         **MR. CUSICK:**  -- believes in his -- in his opinion

13    that the Defendant will be a risk of flight and danger to the

14    community.  Primarily, the danger to the community, based on

15    the circumstances of the investigation and criminal history of

16    this Defendant.

17              Agent Emerson will testify that during the

18    investigation of the case, he was the case agent and he -- that

19    Mr. Somkongmany was encountered a couple of times when

20    transactions that occurred in September of 2019.  In

21    particular, it involved the delivery of fentanyl pills from

22    Dallas to Houston, Texas.

23              That during September of 2019, that there was a

24    confidential source for the DEA and negotiated the purchase of

25    30,000 fentanyl pills from a trafficker of unknown identity,

1   but -- and a person name of Juan Pelon (phonetic) in Mexico,

2   which was brokered by Roque Zamudio-Mendoza, the Defendant

3   Number 1 in this indictment.

4        **(Pause in the proceeding.)**

5        **MR. CUSICK:**   Juan Pelon sent Southanome

6   Frichithavong, who's a co-Defendant in this case, and Patsamong

7   Somkongmany from Dallas, Texas to deliver the 30,000

8   pills -- fentanyl pills to the confidential source in Houston.

9        On September the 20th, 2019, Mr. Frichithavong

10  contacted the confidential source and advised that he arrived

11  in -- had arrived in Houston with the 30,000 fentanyl pills.

12       DEA undercover officers met with Mr. Frichithavong

13  and also Mr. Somkongmany at the Doneraki (phonetic) Restaurant,

14  300 Gulf Gate Mall, Houston, Texas, and obtained a sample of

15  the fentanyl pills, which was a plastic bag containing five

16  fentanyl pills.

17       After that transaction, the confidential source

18  negotiated the purchase of the full 30,000 fentanyl pills from

19  the unidentified contact in Mexico, U.N.3516 for $270,000.  And

20  it was determined that the -- that transaction would occur in

21  two parts; 19,000 and 11,000 fentanyl pills.

22       Mr. Frichithavong then contacted the confidential

23  source and sent multiple photographs and a personalized video

24  depicting the 19,000 fentanyl pills in his possession.

25       **(Pause in the proceeding.)**

4

1          **MR. CUSICK:**  We believe the --

2      **(Voices whispering.)**

3          **MR. CUSICK:**  -- none of the drugs were seized on that

4   occasion.  But there was a court-authorized wiretap in --

5      **(Pause in the proceeding.)**

6      **(Voices whispering.)**

7          **MR. CUSICK:**  Correct, myself, your Honor.

8          There was -- this was not a result of the court-

9   authorized wiretap going on at that time.  This was just based

10  on conversation with the confidential course.  And the only

11  fentanyl seized in this occasion were the five fentanyl pills

12  as a sample, which were -- were tested and -- confirmed to have

13  been fentanyl.

14         But the -- the 30,000 pills to be later delivered

15  were not.  And that's it, your Honor.

16         And I would tender to Mr. Macias here is a copy of

17  the proffer from the agent.

18         **MR. MACIAS:**  Thank you.

19         **MR. CUSICK:**  Thank you.

20         **THE COURT:**  Make sure I understand.  What timeframe

21  was this?

22         **MR. CUSICK:**  September of 2019, your Honor.

23         **THE COURT:**  Okay.

24     **(Pause in the proceeding.)**

25         **THE COURT:**  Oh, waiting for someone to do some.

1            Agent Emerson, if you could come up to the witness

2    stand, please.

3         **(Pause in the proceeding.)**

4            **THE COURT:**  Raise your right hand.

5         **(Witness sworn.)**

6            **THE COURT:**  Okay.  You heard the proffer that was

7    made by Mr. Cusick.  Do you adopt that proffer as your

8    testimony here today under penalty of perjury?

9            **THE WITNESS:**  Yes, sir.  I do.

10           **THE COURT:**  I turn it over to you --

11          **MR. MACIAS:**  Thank you, your Honor.

12           **THE COURT:**  -- Mr. Macias.

13                          **CROSS EXAMINATION**

14   **BY MR. MACIAS:**

15   Q    Agent Emerson, my name is Alejandro Macias.  I represent

16   Mr. Somkongmany.  I'm going to ask you a few questions.

17   A    Yes.

18   Q    I've -- I've received the proffer and heard it

19   from -- from Mr. Cusick.  So just a couple of things I want

20   to -- I want to ask you.

21           Number one, there's mention of conversation with a

22   confidential source from Mr. -- I'm going to -- the co-

23   Defendant, the other --

24   A    Yes.

25   Q    The other Laotian co-Defendant.

EMERSON - CROSS                                        6

1  A    Mr. Frichithavong.

2  Q    Frichithavong.

3        Also, sending of some texts by Mr. Frichithavong.

4  A    Phone calls, texts, and a video --

5  Q    Okay.

6  A    -- messages.

7  Q    And those -- those came from Mr. Frichithavong to the

8  confidential source?

9  A    Yes.

10 Q    Okay.  And -- but there were none from Mr. Somkongmany,

11 correct?

12 A    Correct.  None.

13 Q    Okay.  Well I'll just cut down to it.

14       Besides his mere presence, did Mr. Somkongmany do

15 anything to facilitate this drug transaction?

16 A    He's the one that physically handed the pills to the

17 undercover officer.

18 Q    The -- the five pills.

19 A    Correct.

20 Q    Okay.  So this happened in a restaurant in 2019.

21 A    In the parking lot.

22       It was -- I was one of the undercover officers.  I

23 was present.  And then there was another undercover officer

24 that actually received it in the parking lot from

25 Mr. Somkongmany.

1   Q    But what law enforcement agencies besides DEA were

2   involved?

3   A    Houston Police Department and Galveston Police Department

4   were present.

5        **(Pause in the proceeding.)**

6   **BY MR. MACIAS:**

7   Q    And Galveston?

8   A    Correct.

9   Q    Was there any video recovered of this transaction?

10  A    I believe there are photographs.  I don't know if there's

11  a video.  But photographs of the transaction took place.  And

12  obviously, the undercover officer was who received it.

13  Q    Okay.  Was photographs from what agency?

14  A    DEA.  I don't know what agency.

15  Q    Okay.

16  A    Law enforcement.

17  Q    Okay.  So I -- I apologize.  I'm trying to -- I'm trying

18  to just cut it down.

19       Were there officers from the HPD taking the photos?

20  Or officers from Galveston?

21  A    Well it's, you know, we're a task force, which is

22  comprised of, you know, at the time there is maybe eight

23  different agencies.  Right now I think we're at 15 agencies.

24       But it was law enforcement that's working with DEA.

25  Q    Okay.

1      **(Pause in the proceeding.)**

2   **BY MR. MACIAS:**

3   Q    And do -- and you reviewed these photographs?

4   A    Yes.

5   Q    And do they show Mr. Somkongmany actually delivering the

6   pills?

7   A    Yes.  And I was -- I was the other undercover officer.  So

8   I physically witnessed him deliver the pills.

9      **(Pause in the proceeding.)**

10  **BY MR. MACIAS:**

11  Q    Okay.  And --

12     **(Pause in the proceeding.)**

13  **BY MR. MACIAS:**

14  Q    That was back in 2019, correct?

15  A    Yes.

16  Q    Since this is 2019, do you have information that

17  Mr. Somkongmany was involved in any fentanyl transactions?

18  A    No, sir.

19     **(Pause in the proceeding.)**

20  **BY MR. MACIAS:**

21  Q    Now, when Mr. Somkongmany was arrested, were you present?

22  A    No, sir.

23  Q    Okay.  But was there a search warrant concurrent with his

24  arrest?

25  A    No, sir.

1  Q    Okay.  So agents didn't -- did agents during his arrest

2  search his residence?

3  A    Not that I know of.  If they did, it would have been a

4  consent search.  But if -- if they did, nothing was recovered

5  that I'm aware of.

6  Q    Okay.  So no drugs, no money, no firearms?

7  A    Correct.

8  Q    Okay.  And it was at his sister's residence, correct?

9  A    I don't know where exactly his arrest took place.

10  Q    But it was -- it was -- it was a house.

11  A    Yes, sir.

12  Q    Okay.

13       **(Pause in the proceeding.)**

14  **BY MR. MACIAS:**

15  Q    Do you have any evidence or are you aware of any

16  communications with Mr. Somkongmany and Zumudio Mendoza?

17  A    No, sir.

18  Q    Okay.  Do you have any -- are you -- do you know if

19  Mr. Somkongmany has ever left -- left the United States?

20  A    No, I'm not aware of.

21  Q    Okay.  Are you aware that -- are you aware of any

22  violations of parole --

23  A    No, sir.

24  Q    -- by Mr. Somkongmany?  Violations of probation by

25  Mr. Somkongmany?

EMERSON - CROSS                                      10

1    A    NO, sir.

2    Q    Violations on bond by Mr. Somkongmany?

3    A    No, sir.

4    Q    Okay.

5         **(Pause in the proceeding.)**

6    **BY MR. MACIAS:**

7    Q    Are you aware that of the -- of the whereabouts for

8    Mr. Frichithavong, his co-Defendant?

9    A    I believe he's in Laos.

10   Q    Okay.

11   A    Or in Vietnam.

12   Q    And Mr. Zamudio Mendoza?

13   A    In Michoacan, Mexico, Morelia, Mexico.

14   Q    Okay.

15        **(Pause in the proceeding.)**

16   **BY MR. MACIAS:**

17   Q    Were the five pills of fentanyl weighed and tested?

18   A    Yes, sir.  It was sent for laboratory testing and tested

19   positive for fentanyl.

20        **(Pause in the proceeding.)**

21   **BY MR. MACIAS:**

22   Q    So during this transaction, there's no evidence that

23   Mr. Somkongmany was involved in the negotiation of any price

24   for the fentanyl pills.

25   A    Correct.  No, sir.

EMERSON - CROSS                    11

1   Q    There's no evidence that he was --

2        **(Pause in the proceeding.)**

3   **BY MR. MACIAS:**

4   Q    That he received any money himself out of this

5   transaction.

6   A    Correct.  No, sir.

7        **(Pause in the proceeding.)**

8        **MR. MACIAS:**  Just a -- must a minute, your Honor.

9        **(Pause in the proceeding.)**

10       **MR. MACIAS:**  I'll pass the witness.

11       **THE COURT:**  Mr. Cusick?

12       **MR. CUSICK:**  I have no further questions, your Honor,

13   in light of this Defendant.

14       **THE COURT:**  Okay.  Mr. Emerson, let me -- Agent

15   Emerson, let me ask you a couple of questions.

16       One, other than this one transaction, that we're

17   talking about in 2019, is this Defendant accused or alleged to

18   have committed any other acts or actions in violation of law?

19       **THE WITNESS:**  No, sir.  It's just that one

20   transaction.

21       **THE COURT:**  Okay.  And I'm sorry.

22       Is there -- the Pretrial Report, which I think I

23   already said.  If I didn't, it's Exhibit 1 in this hearing.

24       **MR. CUSICK:**  Yes, sir.

25       **THE WITNESS:**  Yes.

1              **THE COURT:**  Okay.  It says,

2          "According to Immigration records, the

3          subject appears to have an outstanding

4          warrant of removal pending with ICE."

5          Is that an ICE detainer?

6              **MR. CUSICK:**  Yes, your Honor.

7      **(Pause in the proceeding.)**

8              **THE COURT:**  Okay.

9      **(Pause in the proceeding.)**

10             **THE COURT:**  Okay.  You may step down from the witness

11   stand.

12             **THE WITNESS:**  Thank you.

13             **THE COURT:**  Thank you very much.

14             **THE WITNESS:**  Yes, sir.

15     **(Witness steps down.)**

16             **THE COURT:**  Anything further, Mr. Cusick?

17             **MR. CUSICK:**  No, your Honor.

18             **THE COURT:**  Mr. Macias?

19             **MR. MACIAS:**  Your Honor, Mr. Somkongmany has a sister

20   that he lives with.  I would like -- I would -- I would love to

21   proffer her information and her --

22             **THE COURT:**  I would love for you to proffer it.

23             **MR. MACIAS:**  Your Honor, I -- I attempted to, or I

24   did, email and call Pretrial Services with her information.

25   But apparently, they didn't get it in time.

1       I emailed, or I -- I left a phone message for Miss

2  Delgado.  And also left a text message with her this morning

3  actually.

4       Maybe they could verify some of Mr. Somkongmany's

5  information.  But apparently that -- that didn't happen before

6  today's hearing.

7       But she is a U.S. citizen.  She has -- I spoke to her

8  a few times, your Honor.  When I say a few times, probably

9  four.

10      She's a U.S. citizen.  She has a valid Texas driver's

11 license.  She owns her home with her husband.

12 Her -- her -- she has children and her mother that live with

13 her.  And that's where Mr. Somkongmany was living for the

14 recent -- recent past while he -- while he was working.

15      As noted in the Pretrial Services Report, so she

16 would, and I will -- I will offer that she has agreed to be a

17 third-party custodian or guarantor should the Court allow

18 Mr. Somkongmany to be free on bond, your Honor, or -- or -- or

19 pretrial release I should say.

20      And that's what I would proffer on -- on that issue,

21 your Honor.  And I think the rest that -- the rest that I have

22 is really argument.

23          **THE COURT:**  Okay.  Argument, Mr. Cusick.

24          **MR. CUSICK:**  Your Honor, the Government's concern

25 is -- the Court's well aware of, the offense he's alleged to

1    his involved with the conspiracy occurred during September,

2    2019.  So there's been a big gap in time.

3            And as Agent Emerson testified, there's no reason to

4    believe there was any -- any flight in between then, or acts of

5    violence, or anything like that, and no other involvement with

6    the conspiracy.

7            The Government's most concerned about if he's in this

8    country illegally and there's an ICE detainer, I didn't put on

9    proof of it, but I can tell this Court, one of the Defendants

10   released last Friday on an ICE detainer, agreed to a bond, and

11   he was taken to Mexico and deported yesterday.

12           And my -- my asking for detention is more out of fear

13   of another agency of our Government than I am of the Defendant.

14   Because I have no control over what they do.  And if that

15   happens, I --

16           **THE COURT:**  But can I --

17           **MR. CUSICK:**  -- can't -- Government can't finish its

18   case.

19           **THE COURT:**  I hear you loud and clear.  Loud and

20   clear.

21           So what authority can I consider that?

22       **(Pause in the proceeding.)**

23           **THE COURT:**  Start with you.

24           **MR. CUSICK:**  I don't see why not, your Honor.

25   Because I've been before Magistrate Judges before in other

```
 1   Divisions -- other parts of the District where an ICE detainer
 2   is pretty much there was -- there was detention honored, then
 3   there wasn't even a detention hearing.
 4        But it's -- it depends on the court and the -- the
 5   perception of what that ICE detainer means, and what can
 6   happen, or doesn't happen.
 7             THE COURT:  Mr. Macias, what do you think?
 8             MR. MACIAS:  Sure, your Honor.
 9             THE COURT:  I understand what, you know, see well
10   I -- I -- I might have been born at night.  I wasn't born last
11   night.  I -- I totally see what's the issue here is.
12        So what --
13             MR. MACIAS:  Your Honor, practically, I'll
14   start -- I'll start this.  Start it this way.
15        Mr. Somkongmany is a national of -- citizen of Laos,
16   okay, southeast Asia.  He -- his family fled during the -- the
17   revolutionary war there and sought refuge here in the United
18   States.  He's been here since the '70's.
19        It is the United States and Laotian Government don't
20   have a -- a very good relationship with each other.
21        (Pause in the proceeding.)
22             MR. MACIAS:  Mr. -- and it's in -- it's in the
23   report, Mr. Somkongmany had been -- does have an order of
24   deportation.  But Laos -- the Laotian Government won't accept
25   them.
```

1          So he is always -- he has been released on an

2   immigration bond where you would have to report.  And then

3   after a certain, I think after six months, they just said that

4   you didn't have to report anymore.

5      So the -- the ICE DHS knows that he's here.  And knows

6   that he's -- knows he doesn't have permission to be here.  So I

7   don't think -- anecdotally, I represent a client in the Eastern

8   District on a presumption case with an ICE detainer and

9   he's -- he's out on bond.

10          So the -- it -- it -- I don't think anecdote or fear

11  can control or --

12          **THE COURT:**  Well so --

13          **MR. MACIAS:**  -- override the BRA.

14          **THE COURT:**  Agreed.  But it sound

15  like -- Mr. Cusick's position, as I understand it, and don't

16  let me, I mean, I know you're not going to -- won't be afraid

17  to tell me if I'm saying the wrong thing.

18          He would say, I think what I'm hearing is, hey, his

19  concern is that ICE is going to pick up your client, and sent

20  him to Laos, and then we're not -- any conditions I impose is

21  irrelevant, cause he's never going to be here in the courtroom.

22          If you were assured, or you knew that ICE wasn't

23  going to detain him, sounds like you say put him -- put him on

24  some strict conditions to assure his appearance at trial.

25          **MR. CUSICK:**  Yes, your Honor.

1          **MR. MACIAS:**  Your Honor, but -- but I believe

2    that -- that the BRA speaks to risk of voluntary flight.

3    Mr. -- Mr. Somkongmany has no intention of leaving the United

4    States or leaving the -- the jurisdiction of this Court or this

5    District.

6          **THE COURT:**  I'm -- I'm -- I'm with you loud and

7    clear.  That's -- I'm not saying Mr. Cusick's -- I think

8    Mr. Cusick and you are saying the same thing, right?

9          Mr. Cusick isn't concerned about him voluntarily

10   leaving.  His concern is that ICE is going to pick him up

11   and -- and -- and take him against -- against his will.

12         **MR. MACIAS:**  Well --

13         **THE COURT:**  We -- we -- we, for example, and this is

14   actually this is I think the first time in six years this issue

15   has ever come up with me.

16         Cause most of the times what happens is, that if

17   there is an ICE detainer, then I understand why, given that

18   your understanding that Laos isn't going to take him back.

19         Most of the time if you have someone who's here, been

20   a long time, and you get an ICE detainer, they don't want the

21   ICE detainer to go through.  Cause they're worried they're

22   going to get sent back to whatever country.

23         **MR. MACIAS:**  Sure.

24      **(Pause in the proceeding.)**

25         **MR. MACIAS:**  But here we have a situation, Judge,

1    where the -- the -- the Government has to prove that he is a

2    flight risk, a -- a voluntary flight risk.  I -- besides having

3    the detainer, it -- it -- and it's the Executive Branch of the

4    Government.

5            I talked to Mr. -- Mr. Cusick, I believe they're on

6    the same team.  So if the concern is -- and, your Honor,

7    anecdotally again, I've seen the DOJ make -- have agreements

8    with ICE or DHS to keep people in the country when they're

9    cooperating witnesses, to keep people in the country when

10   they're material witnesses, to keep people in the country when

11   they're confidential sources or informants.

12           If -- if -- if the fear really is that

13   Mr. Somkongmany will be sent somewhere where they can't get

14   back to him, I think that fear is easily alleviated by

15   communicating with DHS.

16           **THE COURT:**  The -- the reason I chuckle at that is,

17   anecdotally --

18           **MR. MACIAS:**  That sounds easy.

19           **THE COURT:**  Anecdotally, in this case, the larger

20   case, it -- if, you know, it's clear that we had one yesterday

21   where an individual unbeknownst to Mr. Cusick and the

22   Government, ICE -- well ICE put a detainer on after there was

23   no detainer, no detainer, no detainer.  And then all of a

24   sudden, you know, as soon as a detention hearing was finished,

25   there became a -- an ICE detainer.

1          **MR. MACIAS:**  And even the detainer itself, Judge, the

2    I-247A, in its -- in its -- in its form it says that this

3    detainer arises from DHS authorities and it should not impact

4    decisions about the alien's bail, rehabilitation, parole,

5    release, diversion, custody, classification, work quota,

6    assignment, or other matters.

7          So just -- and just because he has a detainer, and

8    like I said, I have -- I don't -- I don't know that he has a

9    detainer, but I'm assuming.  That can't be enough

10   to -- that's -- that -- the Government doesn't meet its burden

11   just because okay we have an ICE detainer.  So he's -- he's a

12   flight risk.

13         That's not -- that can't be the law.  Otherwise,

14   alien admissibility, or reentry cases would be a presumption

15   case.  This is presumption case because of the -- the -- that

16   matters involved, the drugs involved, not because of his status

17   in the country.  Okay?

18         The -- the evidence is there's no evidence that he's

19   never been -- not come to court.  There's no evidence that he's

20   ever violated parole, probation.  There's nothing here, your

21   Honor, that would suggest that he's a voluntary flight risk.

22   And that's what the BRA contemplates, voluntary fleeing.

23         Now, like I said, practically, if -- and I don't know

24   what country the man was that was deported from, I'm

25   assuming -- I'm assuming Mexico just based on the names.

1           **THE COURT:**  That's Mexico.

2           **MR. MACIAS:**  I think that's different than the

3   situation where we have here, your Honor, where he's a Laotian

4   national and they're just not accepting him.

5           He's got -- he's got it as clear from the PS -- PTR

6   report.  He's got a felony conviction, and so Laos isn't going

7   to take him back.  And plus he's a refugee from his own

8   government, your Honor.

9           That things haven't changed since he left.

10  They -- they still suffer the same problems that they had when

11  his family fled.

12          **(Pause in the proceeding.)**

13          **MR. MACIAS:**  His two -- his criminal history

14  is -- well we're talking about risk right now, the flight risk.

15          I don't -- I don't -- I just don't think that that's

16  enough to keep him here, your Honor.

17          The -- the other option is well, I just don't think

18  that one branch of the -- one section of the Executive Branch

19  saying we don't know what another part of the Executive Branch

20  is going to do, so we should keep him and -- we should keep him

21  detained just to be safe.

22          I think that just goes against what everything that

23  the BRA stands for, your Honor.  And what -- first and foremost

24  is that everyone should be released.

25          **(Pause in the proceeding.)**

1    **THE COURT:**  Any thoughts, Mr. Cusick?

2    **MR. CUSICK:**  No, your Honor.  I'm -- of course,

3  defense -- every defense attorney is going to say everybody

4  ought to be released.  But that's why the law exists.  That's

5  why we have detention hearings, cause there's some that

6  shouldn't be released.

7    The fact of the matter is, I've prosecuted Defendants

8  before, I guess, have against a similar, or an analogy of this

9  would be from Cuba.

10    They won't take -- we can't remove or deport people

11  to Cuba.  So they have Defendants that, while they're here

12  illegally, and there may have been a detainer, DHS knows they

13  can't deport them.  They won't be accepted.

14    I mean, aside from this detainer --

15    **THE COURT:**  Wait.  Say that example again, I missed

16  it.  I'm sorry.

17    **MR. CUSICK:**  From Cuba.

18    Had Defendants where they're deemed they're here and

19  they've entered illegally.  There's a detainer on them, but

20  Cuba won't take them back.  And so it turns out that ERO or

21  DHS, they're not going to hold the Defendant because they know

22  they can't remove or deport them, and then be in detention

23  indefinitely.

24    And in those cases, those Defendants on their own,

25  what happened in the United States, were either detained or

1    released on bond.  Too, my argument is kind of two-fold, I

2    guess.

3            This Defendant, I'm more fearful that ICE is going to

4    act on a detainer and then do something to take him out of our

5    jurisdiction.  But at the same time, he's facing a ten to life

6    maximum potential punishment on the conspiracy count and then

7    also the -- the substantive counts that he's charged with.

8            So the presumption, and the Government believes that

9    he is a danger to the community.  You know, the person he's

10   with making the deliveries is from Laos also.  And now where is

11   he?  He's back in Laos.  I'm sure if he were here, he would say

12   I was not going to leave.

13           So the -- the Government just feels that if he's

14   released, there's -- there's too many ways that he -- he can

15   disappear from the jurisdiction.  And he would -- he would not

16   say it was voluntary.

17           But nonetheless, if he just acquiesces and -- and ICE

18   acting on a detainer and removing him somewhere, we can't

19   proceed with the case against him.

20       **(Pause in the proceeding.)**

21       **THE COURT:**  Hmmm.

22       **(Pause in the proceeding.)**

23       **MR. CUSICK:**  And -- and this, to the nuance of it,

24   he's technically in the -- the custody of the U.S. Marshal

25   Service.  And it's the relinquishment of custody from the

1   Marshal Service over to DHS if he's released on bond.  That

2   then they're free to do whatever they want to.  They can't do

3   it if he's in custody.  And if --

4               MR. MACIAS:  Your Honor, there's a provision in the

5   BRA that -- that covers this situation.

6               If -- if the concern really is he's going to be

7   deported.

8               THE COURT:  By the way, you're the first person ever

9   that I've heard refer to it as BRA.

10              MR. MACIAS:  I'm sorry, Judge.

11              THE COURT:  No, no, no, no.  It's actually

12  interesting.  I'm thinking here, it is the Bail Reform Act.  I

13  don't know why -- I don't know why everyone refers it to Bail

14  Reform Act.  I've never heard anyone say BRA.

15              MR. MACIAS:  I've used that way too long --

16              THE COURT:  No.  No need to apologize.

17              MR. MACIAS:  -- I guess.

18              THE COURT:  More people should.

19              Help me on what provisions.  And --

20              MR. MACIAS:  It's --

21              THE COURT:  That's what I'm just grappling with.

22  Cause I -- I got to be honest.  I'm sympathetic to Mr. Cusick's

23  position, but I'm -- you're making a good -- you're making a

24  damn good argument.

25              MR. MACIAS:  Well, Judge, (d), 3142(d), "Temporary

1    Detention to Permit Revocation of Conditional Release,

2    Deportation, or Exclusion."

3            So it allows a ten-day period to see if they're going

4    to do anything.  And if they don't do anything, then he -- the

5    fallback is, okay, now he's not under that rule.  So we can

6    treat him just like any other person dealing with 3142 issue.

7            It says on Part II.

8            **THE COURT:**  Hold on.

9            **MR. MACIAS:**  Okay.

10       **(Pause in the proceeding.)**

11           **MR. MACIAS:**  I'm sorry. D(e)(1).

12           **THE COURT:**  Let me see if I -- if I put in BRA

13   3142(d) if that will come up.

14           **MR. MACIAS:**  It's 18 U.S.C. 3142.

15           **THE COURT:**  Whoa, I just did that.  That is

16   now -- that is not what you want to put in.  That is not what

17   you want to put in let me just say that.

18       **(Laughter.)**

19           **THE COURT:**  That was not -- that -- don't do that.

20       **(Pause in the proceeding.)**

21           **THE COURT:**  Caught me off guard.

22       **(Pause in the proceeding.)**

23           **MR. MACIAS:**  To be precise, your Honor, it's

24   3142(b)(1)(B) and it -- it goes into (2).

25       **(Pause in the proceeding.)**

1          **THE COURT:**  Do you see that?

2          **MR. MACIAS:**  Thank you.

3          **THE COURT:**  No, no.  Not -- not that.

4          **MR. MACIAS:**  I --

5          **THE COURT:**  Not, I'm sorry.  Not did you do the

6    Google search.  Did you take a look at the provision

7    3142(d)(2).

8          **MR. CUSICK:**  No, your Honor.  If I could look on --

9          **THE COURT:**  Yeah.  Absolutely.

10        **(Pause in the proceeding.)**

11        **(Voices speaking off the record.)**

12         **THE COURT:**  Take your time.  I think that's going to

13   resolve this issue, actually.  But maybe I'm wrong.

14         **MR. MACIAS:**  And -- and that's what I've been

15   suggesting, your Honor.

16         The DOJ division of the Executive Branch can inform

17   the DHS Division of the Executive Branch that they have this

18   issue.  And --

19         **MR. CUSICK:**  It's similar to the ten day hold lock

20   times for parole violation warrant that would happen during the

21   state, your Honor.

22         My fear is that this is what happened on our case

23   yesterday.  The person's released on bond, goes back to the

24   cell block.  And then viola, ICE calls, does an interview, and

25   then a detainer appears.  And for the one last week, there

1  wasn't and then all of a sudden then the Defendant appears.

2         I mean, if there's a ten-day temporary hold, I'm

3  not -- I wouldn't -- I wouldn't alert ICE because I think that

4  would just prompt them to -- to try to take some action on it.

5         So, I mean, I'll defer.  What Mr. Macias' argument is

6  well laid, and what the Court decides on it.  But I'm

7  just -- I'm just putting out there that --

8         **MR. MACIAS:**  And -- and I ran into this issue on the

9  state side very recently, Judge, within the past two weeks.

10         I had a client that was charged with possession of

11  over five -- or five kilos of methamphetamine on the state

12  side.  That's a 15 to life case.  He had an ICE detainer.

13         I got -- the case was dismissed.  And so he still had

14  a ICE detainer.  So then right, within four -- within

15  two -- within two days ICE picked him up from the Harris County

16  Jail and took him over to Joe Corley, next door to Joe Corley,

17  on HigBig (phonetic), which is their Montgomery County

18  processing Center.

19         He was there another week before he went anywhere.

20  He already had a order of deportation.  There was no -- there

21  was do not pass go, you don't get your 200 bucks.  You -- you

22  already have an order of deportation.  You don't get to go in

23  front of the Judge again.  You just wait for the next plane to

24  get out of here.

25         So in this case, and I don't know about the gentleman

1   from last week, he's probably still over at HigBig.  And so if

2   the provision says, such a person --

3        **THE COURT:**  Well, it's neither here nor there.  But

4   actually, what happened to the other one was, that the defense

5   lawyer was of the view, whoa, whoa, I'm worried that if the

6   person is released from custody, they are going to be deported.

7   They didn't want to be deported.

8        So there, you know -- that's the -- that other case

9   is neither here nor there today.

10       **MR. MACIAS:**  That -- Mr. Somkongmany does not want to

11  be deported, your Honor.

12       **THE COURT:**  Right.  Right.  Right.  So -- so -- so

13  you would say I utilize this procedure --

14       **MR. MACIAS:**  Well not necessarily, your Honor.

15  Because the and between (1)(B) and (2) is "and such person may

16  flee or pose a danger to any other person."

17       Again, Mr. Somkongmany isn't fleeing voluntarily.

18  He's not fleeing involuntarily.  Because an involuntary fleeing

19  is not fleeing.  It's -- it's whatever happens with -- with

20  ICE.

21       So I don't think he deserves -- I think he deserves

22  bond today, your Honor.

23       **THE COURT:**  So your suggestion is I let him out

24  today.  And I make his sister the third-party custodian.

25       **MR. MACIAS:**  Yes, your Honor.

1          THE COURT:  Well where is she?

2          MR. MACIAS:  She is at work, your Honor.  She

3  couldn't be here today.  But she could certainly come and speak

4  with Pretrial Services.  I tried to connect them, but

5  apparently the connection didn't go through.

6          She speaks English.  She's a USC with a driver's

7  license and reliable transportation.  Mr. Somkongmany works at

8  Hartz.  He's -- he's able to abide by any conditions you

9  would -- you would put on him, your Honor.

10     **(Pause in the proceeding.)**

11          THE COURT:  Just -- the -- the sister's name is in

12  the Pretrial Report, right?  Bounwat Jaelo --

13          MR. MACIAS:  Yes.

14          THE COURT:  -- Somkongmany.

15          MR. MACIAS:  They just didn't have the phone number.

16  I've got the phone number.  And I've -- I've communicated that

17  to Pretrial.

18     **(Pause in the proceeding.)**

19          THE COURT:  Let's take a two minute break.  Two

20  minutes.  I just want to talk to my crack staff over here.  Two

21  minutes and we'll be right back.

22          UNITED STATES MARSHAL:  All rise.

23     **(Recess taken from 01:23 p.m. to 01:30 p.m.)**

24          UNITED STATES MARSHAL:  All rise.

25     **(Pause in the proceeding.)**

1          **THE COURT:**  Please be seated.

2          So, Mr. Macias, let me ask you, 3142(d)(2).  So the

3   way that works is if I find that a person may flee or pose a

4   danger, then I can order that they be held temporarily for ten

5   days, make the Government let ICE know.  And then, I guess, if

6   the Government -- if -- if ICE says yes, we're going to deport

7   them.

8          **MR. MACIAS:**  Well, but then the -- then the -- then

9   the Executive Branch has a choice.  Do they want to prioritize

10  his deportation?

11         If they want to prioritize his deportation, they

12  dismiss the indictment, and he gets sent wherever he wants to

13  go.

14         If they -- they don't want to -- if they don't want

15  to prioritize his deportation, I'm -- I'm -- I'm assuming --

16         **THE COURT:**  Well wait, wait, wait.  But the -- but it

17  says,

18              "If the official fails or declines to take

19              such person into custody during that

20              period, such person shall be treated in

21              accordance with the other provisions of

22              this section."

23      **(Pause in the proceeding.)**

24         **THE COURT:**  Meaning --

25      **(Pause in the proceeding.)**

1        **THE COURT:**  I guess my question is, does that mean

2   that if I find he could flee or pose a danger, I can give him

3   the ten days.  And then I could still find that there are

4   conditions, or combination of conditions?

5        **MR. MACIAS:**  Well -- well, I -- I -- that seems

6   counter-intuitive, your Honor.  Because if you -- if you find

7   that he's a flight risk -- if you -- if you found that beyond

8   the -- the preponderance, then to -- to trigger the ten days,

9   and if they don't pick him up, I --

10       **THE COURT:**  But there's a difference -- there's a

11   difference whether you think, right, the -- detention isn't

12   whether I think he may flee or whether he's a danger.  It's

13   whether or not there are any conditions, or combination of

14   conditions, that I could impose to alleviate the threat.

15       **MR. MACIAS:**  Okay.

16       **THE COURT:**  Okay.  Here's what I want to do.

17      **(Pause in the proceeding.)**

18       **MR. MACIAS:**  Cause I don't -- I'm sorry, your Honor.

19   I feel like I have to say it.

20       I don't want you to say that he's a flight risk.

21       **THE COURT:**  I understand.

22       **MR. MACIAS:**  Then we come back and say --

23       **THE COURT:**  I -- I -- I totally understand.

24   I -- I'm -- I'm on board with both of your positions.  And I

25   sympathize and understand.  I -- I'm -- I'm with you.

1          Here's what I want to do.  Number one, if I'm going

2    to make a third-party custodian --

3          **MR. MACIAS:**  Okay.

4          **THE COURT**  -- they have got to be here --

5          **MR. MACIAS:**  Sure.

6          **THE COURT:**  -- in front of me.  Either -- well, they

7    got to be here cause they got to sign the paperwork.

8          So my thought right now is, I think you persuaded me.

9    I want to go back and look, to be honest, to the case law, make

10   sure I understand.  And I'm sort of -- I'm not sure, it's

11   neither here nor there.  But I'm curious as to whether or not

12   Laos will accept the ICE detainer.  I'm curious

13   what -- my -- my gut.  I have a funny feeling what I know what

14   the law's going to be and whether I consider the mere fact the

15   ICE detainer alone.

16         But I just want to go take a look at it.  When can

17   she be here?

18         **MR. MACIAS:**  I --

19         **THE COURT:**  I guess, my --

20         **MR. MACIAS:**  I'll talk to her today.  I can get her

21   tomorrow or -- or Friday.

22      **(Pause in the proceeding.)**

23         **THE COURT:**  Let me look at our calendar.

24      **(Pause in the proceeding.)**

25         **MR. MACIAS:**  And she's helped him with his -- because

1   of his -- his unique, I don't want to say unique, cause there's

2   a lot of -- there's a lot of people in the Southeast Asian

3   community that suffer the same.

4           She's helped him get his driver's license, and things

5   of that nature.  So she --

6           THE COURT:  We --

7           MR. MACIAS:  She understands him.

8           THE COURT:  We've got a couple of detention hearings

9   this case this afternoon.  Is that it?  We don't have any

10  other?

11          MR. CUSICK:  Everybody else that's inbound from other

12  places, McAllen, Brownsville --

13          THE COURT:  Are next week.

14          MR. CUSICK:  Bond have already been set.

15          THE COURT:  Oh, okay.

16          MR. CUSICK:  They're just coming in for arraignments.

17          THE COURT:  I was just looking at Thursday or Friday

18  of this week.  I was like, I don't believe we -- we don't have

19  any more.

20      **(Pause in the proceeding.)**

21          THE COURT:  You want to take a minute and just see

22  when he's available?

23          MR. MACIAS:  Sure, I -- I'll step out and call her

24  right real quick.

25          THE COURT:  Yeah.  Any time Thursday or Friday,

1  whatever.  I want to make sure she's here, cause I want to

2  basically explain to her what the job of a third-party

3  custodian is, make sure she understands, have her sign the

4  paperwork.  And the in the meantime, that gives me just a

5  chance to sort of confirm everything we've talked about.

6          **MR. MACIAS:**  Okay.

7          **THE COURT:**  Unless something changes with my

8  research.  That's what I'm going to do.

9          **MR. MACIAS:**  Your Honor, I will be comfortable right

10  now saying two o'clock is going to work.  I don't know if

11  that's too late, or if you want to do it in the morning.

12          **THE COURT:**  I'll do it when -- I literally want to

13  make sure -- Mr. Cusick can participate if he wants in person

14  or we can do it on Zoom with you.  So however you want to do

15  it.

16          I -- I just want to make she -- I don't want to set a

17  time and then she can't be here.

18          **MR. MACIAS:**  Well if I -- I'll step out and call her

19  real quick, your Honor.

20          **THE COURT:**  I will stay on the bench.  We're off the

21  record.

22          **MR. MACIAS:**  Oh, thank, you Judge.

23          **(Recess taken from 01:35 p.m. to 1:40 p.m.)**

24          **MR. MACIAS:**  She works at a manufacturing plant.  So

25  it may be too -- too loud for her to see you.  Maybe she can't

1   have her phone on.

2           **THE COURT:**  Let's do this.  How about we say two

3   o'clock tomorrow.  Wait.

4       **(Pause in the proceeding.)**

5       **(Voices speaking off the record.)**

6           **THE COURT:**  We're going to be out in the afternoon.

7   We can do tomorrow morning or any time on Friday.

8       **(Pause in the proceeding.)**

9           **MR. MACIAS:**  Any time on Friday, your Honor.

10      **(Pause in the proceeding.)**

11          **MR. MACIAS:**  That'll give her time to give her job

12  notice.

13          **THE COURT:**  Okay.  You -- you tell me.  I'm

14  accommodating.

15          **MR. MACIAS:**  Friday at 11.

16          **THE COURT:**  That won't work.  Yes, that works.

17      **(Laughter.)**

18          **THE COURT:**  Any time.  Eleven.  No, your Honor.

19          Yes.  Okay.  So let me just make sure we --

20      **(Pause in the proceeding.)**

21          **THE COURT:**  Okay.  So here's our plan.

22          We're going to have her here at 11 a.m.  So I'm going

23  to order the -- basically going to continue this detention

24  hearing until Friday morning at 11.

25          Mr. Cusick, if you want to get on Zoom, just let

1    Mr. Castro know.  We'll set --

2            **MR. CUSICK:**  Yes, I'd like to, your Honor.

3            I notice we have a counsel determination hearing at 9

4    on Margarito Ruiz, or has that been re --

5        **(Pause in the proceeding.)**

6            **MR. MACIAS:**  Oh, this is her calling me back, your

7    Honor.  May I step out?

8            **THE COURT:**  You bet.

9        **(Counsel steps out to take telephone call.)**

10       **(Pause in the proceeding.)**

11           **THE COURT:**  I don't have anything on nine.

12           Oh that was, we were --

13           **MR. CUSICK:**  I think we --

14           **THE COURT:**  -- they -- they --

15           **MR. CUSICK:**  -- moved it to Monday, your Honor?

16           **THE COURT:**  Yeah.  Yeah.

17           **MR. CUSICK:**  Monday at nine.  Okay.  I'm sorry.

18           **THE COURT:**  Yeah.  Yeah.

19       **(Pause in the proceeding.)**

20       **(Voices whispering.)**

21           **THE COURT:**  We are back on the record.  Let the

22   record reflect that Mr. Macias is walking back into the

23   courtroom.

24           **MR. MACIAS:**  Friday at 11 will be perfect, your

25   Honor.  Thank you.

1          **THE COURT:**  Okay.  So just we're all on the same

2    page.  I will remand the Defendant to the custody of the United

3    States Marshals for continuation of this detention hearing

4    Friday at 11 a.m.

5          In the meantime, I'm going to take a look at the law

6    just to make sure I'm -- really just cause I haven't had enough

7    involvement, just to make sure I'm -- I'm confident.

8          My expectation is that what will happen at 11 a.m. is

9    that I will go over terms of release and make sure that his

10   sister fully understands, appreciates the obligation of being a

11   third-party custodian.

12         I guess I do need to make sure the Pretrial Services

13   reaches out to her and talks to her before then.

14         **PRETRIAL SERVICES OFFICER:**  Yes, your Honor.

15         **THE COURT:**  And you -- you've given Pretrial the

16   number?

17         **MR. MACIAS:**  Well I give it to her right now.  Yes,

18   your Honor.

19         **THE COURT:**  Okay.  Perfect.

20         **MR. CUSICK:**  And if I could appear by video, I'd

21   appreciate that, your Honor.

22         **THE COURT:**  Let me think about it.

23      **(Pause in the proceeding.)**

24         **THE COURT:**  Granted.

25         **MR. MACIAS:**  And -- and will Mr. Somkongmany will be

1   brought here, your Honor?

2       **THE COURT:**  Yes.  In fact --

3       **(Pause in the proceeding.)**

4       **THE COURT:**  Is he at joe --

5       **UNITED STATES MARSHAL:**  He's at Joe Corley, your

6   Honor.

7       **THE COURT:**  Joe Corely.

8       **UNITED STATES MARSHAL:**  Yes.

9       **THE COURT:**  So how do we bring him in?

10      **UNITED STATES MARSHAL:**  We'll bring him all the way

11  out.

12      **THE COURT:**  All the way out.  Okay.  Okay.  So then

13  he could be --

14      **UNITED STATES MARSHAL:**  And so he'll be -- he'll be

15  ready.

16      **THE COURT:**  Assuming I -- assuming I -- I give him

17  conditions, he could leave from here --

18      **UNITED STATES MARSHAL:**  Correct.

19      **THE COURT:**  -- as opposed to having him --

20      **UNITED STATES MARSHAL:**  Yes.

21      **THE COURT:**  Okay.  Let's make sure that's there.  So

22  to the extent he's released on Friday, it'll be from here.

23      **MR. MACIAS:**  Thank you, your Honor.

24      **THE COURT:**  Thank you very much.

25      Anything else we need to address?

1          **MR. CUSICK:**  Not on this case, your Honor.

2          **THE COURT:**  Okay.  I appreciate it.  You're all

3     excused.  We're off the record.  Thanks.

4          **(This proceeding was adjourned at 01:45 p.m.)**

5

6                          * * * * * * * *

7

8                         CERTIFICATION

9

10    I certify that the foregoing is a correct transcript from the

11    electronic sound recording of the proceedings in the above-

12    entitled matter.

13

14    _/s/Cheryl L. Battaglia_____          _April 12, 2024____

15           Transcriber                            Date

16    2:23-CR-029

17    04/03/24 - 04/12/24